| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| | DEFENDANTS |
|---|---|
| 23andMe Holding Co. and 23andMe, Inc. | J.R. and M.M. |

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Carmody MacDonald PC, 120 S Central Ave, Ste 1800,<br>St Louis, MO 63105 (314) 854-8600 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☑ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor   ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint seeking declaration of applicability of automatic stay or extension of automatic stay, pursuant to 28 U.S.C. 2201 and 11 U.S.C. 362(a), and injunctive relief, pursuant to 11 U.S.C. 105(a)

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☑ 71-Injunctive relief – imposition of stay
☑ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> 23andMe Holdings et al | BANKRUPTCY CASE NO.<br> 25-40976 | |
| DISTRICT IN WHICH CASE IS PENDING<br> Eastern District of Missouri | DIVISION OFFICE<br> Eastern | NAME OF JUDGE<br>Walsh |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>April 14, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Thomas H. Riske | |

## INSTRUCTIONS

      The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

      A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

      The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | Jointly Administered |
| 23ANDME HOLDING CO. and 23ANDME, INC., | |
| Plaintiffs, | Adv. Proc. No. 25-_____ |
| v. | |
| J.R. and M.M., | |
| Defendants. | |

**DEBTORS' ADVERSARY COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases") and plaintiffs in the above-captioned adversary proceeding, bring this complaint (the "Complaint") seeking (a) (i) a declaration that the automatic stay under section 362 of title 11 of the United States Code (the "Bankruptcy Code") applies to and prohibits the continued prosecution of the below-defined Canadian Proceedings, including as against the below-defined Additional Defendants, or, in the alternative, (ii) an order extending the automatic stay to the Additional Defendants in the Canadian Proceedings; and (b) an injunction, pursuant to section 105 of the Bankruptcy Code,  preventing the continued

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA, 94102.

prosecution of the Canadian Proceedings, including against the below-defined Additional Defendants during the pendency of these Chapter 11 Cases, and state as follows:

## PRELIMINARY STATEMENT

1.    Defendants in this adversary proceeding are named plaintiffs in two class action lawsuits filed in the Supreme Court of British Columbia against the Debtors and the Additional Defendants, based on a cybersecurity breach of the Debtors' customer data systems. *J.R. & M.M.* v. *23andMe Holding Co., et al.*, Case No. VLC-S-S-2465520 (Can. B.C. S.C.) (the "Debtor and D&O Action"); *J.R.* v. *23andMe Holding Co. & 23andMe, Inc.*, Case No. S237147 (Can. B.C. S.C.) (the "Debtor Action" and, together with the Debtor and D&O Action, the "Canadian Proceedings").  These lawsuits bring claims based on identical conduct—the Cyber Security Incident defined below—to the class action pending in the U.S. District Court for the Northern District of California, *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, Case No. 24-md-3098 (N.D. Cal.), and numerous state court lawsuits and arbitrations commenced in the United States, which are the subject of pre-petition settlement agreements (collectively, the "U.S. Actions").  But, although the Canadian Proceedings are based on the same underlying conduct as the U.S. Actions, they also go further than any of the U.S. Actions by naming as defendants certain current and former directors, officers, and employees of the Debtors, as well as the Debtors' auditor, KPMG LLP (United States) ("KPMG").  Although the Canadian Proceedings name additional defendants, they do not plead any claims or liability theories against those individuals that are different from the claims asserted against the Debtors.

2.    By prosecuting these claims against the Debtors in a foreign forum, the Canadian Proceedings threaten to derail the value and operations of the Debtors, the orderly administration of the Chapter 11 Cases, and the asset sale the Debtors are pursuing through those cases.  The plaintiffs in the Canadian Proceedings also cannot avoid application of the automatic

2

stay—which obviously bars the prosecution of claims against the Debtors—through artful pleading based on conclusory allegations that the Additional Defendants are all "co-principals and/or co-conspirators" with the Debtors.  Debtor and D&O Action Compl. (attached hereto as <u>Exhibit A</u>) ¶¶ 6, 9, 47.

3.        Defendants first filed the Debtor Action against 23andMe, which is unquestionably subject to the automatic stay—although Defendants have thus far refused to agree to a stay even as to the Debtors.  Defendants later filed the Debtor and D&O Action, which merely names the Additional Defendants in addition to the Debtors, and are currently seeking leave to add the Additional Defendants to the Debtor Action.  Although there are two Canadian Proceedings, they are for all intents and purposes asserting the same claims, on behalf of the same class.  The two cases contain duplicative claims against the Debtors, and the Debtor and D&O Action also names as defendants Anne Wojcicki, Roelof Botha, Patrick Chung, Peter J. Taylor, and David Baker (collectively, the "<u>Individual Defendants</u>"), who are current and former directors, officers, and employees of the Debtors, and the Debtors' auditor, KPMG (together with the Individual Defendants, the "<u>Additional Defendants</u>").  All the claims against the Additional Defendants are also asserted against the Debtors.  Defendants dispute whether the automatic stay of 11 U.S.C. § 362 applies.  Indeed, as described further below, they recently filed a proposed amended pleading in the Debtor Action, which adds the Additional Defendants but continues to assert claims against the Debtors, in clear violation of the automatic stay.

4.        Defendants' claims against the Additional Defendants are indistinguishable from the claims against the Debtors, and so any further prosecution of the Additional Defendants for those claims would, in substance, allow claims against the Debtors outside of the Chapter 11 Cases.  Moreover, the Debtors have indemnification obligations to the directors and officers named

as Individual Defendants—including for damages and litigation expenses, including attorneys' fees—and thus the prosecution of claims against them threatens the assets of the estate and the interests of creditors as well. And, to the extent the Individual Defendants may seek insurance coverage under applicable insurance policies maintained by the Debtors to pay damages in the Debtor and D&O Action, any insurance payments may erode the aggregate limit of insurance coverage under applicable policies maintained by the Debtors. A special committee of the Debtors' boards of directors (the "Special Committee") is presently investigating potential claims, including against directors and officers, and if any such claims are identified and prosecuted on the Debtors' behalf, these insurance policies may be a source of recovery. Depleting those insurance policies to pay Defendants would thus impair the recovery prospects for any potential estate claims, to the detriment of the Debtors and their creditors.

5.      Discovery obligations in the Canadian Proceedings—for claims against the Debtors, the Individual Defendants, or KPMG—will also disrupt the operations and value of the Debtors, as well as the ability of their directors and officers to perform their duties diligently during the Chapter 11 Cases. Discovery has not yet occurred in the Canadian Proceedings and the relevant documents regarding the underlying Cyber Security Incident are in the possession of the Debtors. And the adjudication of the Canadian Proceedings Action against the Additional Defendants without the participation of the Debtors threatens to prejudice the Debtors with respect to defenses they would otherwise assert in the Canadian Proceedings.

6.      Because the Canadian Proceedings, including with respect to the Additional Defendants, threaten the Debtors and the Chapter 11 Cases, they violate the automatic stay, and the Debtors respectfully request that the Court enter a declaratory judgment to that effect. In the alternative, the Debtors respectfully request that the Court extend the automatic stay to protect the

4

Additional Defendants with respect to the asserted claims.  And the Debtors respectfully request that the Court enter an injunction prohibiting the Canadian Proceedings from proceeding, including against the Additional Defendants.

## JURISDICTION AND VENUE

7.    This adversary proceeding arises in and relates to the Debtors' cases pending before this Court under chapter 11 of the Bankruptcy Code.

8.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

9.    The Court has subject matter jurisdiction over the claims against the Debtors and the Additional Defendants pursuant to 28 U.S.C. § 1334.   Arising-under and arising-in jurisdiction exist over this action because this Complaint seeks to clarify the extent of the automatic stay and/or extend the automatic stay to the non-debtor Additional Defendants.   Related-to jurisdiction exists over the claims against the Debtors and the non-debtor Additional Defendants because (i) the claims against the Debtors unquestionably violate the automatic stay, (ii) the Debtors and the Additional Defendants share an identity of interest, and (iii) continued prosecution of the Canadian Proceedings would divert critical estate resources away from the Debtors' Chapter 11 Cases.

10.    Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11.    Defendants consented to the jurisdiction of U.S. courts by signing the terms of service for 23andMe products and services, which include a forum selection clause under which

they "agree[d] to submit to the exclusive jurisdiction of any state or federal court located in Santa Clara County, California . . . and waive[d] any jurisdictional, venue, or inconvenient forum objections to such courts."[2]  Any civil action arising in or related to the Chapter 11 Cases is proper in this Court, pursuant to 28 U.S.C. § 1334.  *See also, e.g.*, *Creekridge Cap., LLC* v. *La. Hosp. Ctr., LLC*, 410 B.R. 623, 629–31 (D. Minn. 2009) (transferring case to district where bankruptcy case pending, despite forum selection clause, to "promote judicial efficiency and the efficient administration of the bankruptcy estate").

12.     Additionally, in their class action complaints, Defendants recognized and expressly alleged that 23andMe Holding Co. and 23andMe, Inc. are corporations organized under the laws of the State of Delaware, with their principal places of business in San Francisco, California.  *See, e.g.*, Ex. A ¶¶ 18–20.  Defendants purchased products from, and brought litigation against, the Debtors with knowledge that they were U.S. entities and with the intention to do business with U.S. entities.  *See id.* ¶¶ 15–16, 18–20.  Defendants therefore purposefully availed themselves of the privilege of doing business in the United States.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASES FOR RELIEF

14.     The statutory bases for the relief requested herein are 11 U.S.C. §§ 362(a) and 105(a), and 28 U.S.C. § 2201(a).

15.     The Debtors have commenced this adversary proceeding pursuant to Bankruptcy Rules 7001(g), 7001(i), and 7065.

---

[2]   23andMe, *Dispute Resolution and Arbitration*, https://www.23andme.com/legal/terms-of-service/#dispute-resolution-arbitration (last visited Apr. 13, 2025).

6

16.     The Debtors have made no prior request for the relief requested herein to this or any other court.

<strong><u>PARTIES</u></strong>

17.     Plaintiff 23andMe Holding Co. is a corporation organized under the laws of the State of Delaware.

18.     Plaintiff 23andMe, Inc. (together with 23andMe Holding Co., "<u>23andMe</u>") is a corporation organized under the laws of the State of Delaware.

19.     Defendant J.R. is a natural person who resides in British Columbia, Canada. He alleges that he purchased and used 23andMe products and has brought litigation against 23andMe and the Additional Defendants in the Canadian Proceedings.  Pursuant to an order of the Supreme Court of British Columbia, J.R.'s full name has not been publicly filed on a court docket.

20.     Defendant M.M. is a natural person who resides in Ontario, Canada.  She alleges that she purchased and used 23andMe products and has brought litigation against 23andMe and the Additional Defendants in the Canadian Proceedings.  Pursuant to an order of the Supreme Court of British Columbia, M.M.'s full name has not been publicly filed on a court docket.  M.M. is represented by the same counsel as J.R. in both Canadian Proceedings.

<strong><u>BACKGROUND</u></strong>

**I.      The Debtors' Business and the Additional Defendants**

21.     As further set forth in the Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions, Case No. 25-40976 (Bankr. E.D. Mo.), ECF No. 32, which the Debtors expressly incorporate by reference herein, the Debtors operate, among other things, a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Debtors pioneered direct-to-consumer genetic testing through their saliva collection kits, providing customers with access to unique,

7

personalized information about their ancestry, genetic traits, and health risks through their Personal

Genome Service® offerings.

22.     Anne Wojcicki is the co-founder, former chair (and current member) of the

board of directors, and former chief executive officer of 23andMe.

23.     Roelof Botha is a former director of 23andMe and a former member of its

audit committee.

24.     Patrick Chung is a former director of 23andMe and a former member of its

audit committee.

25.     Peter J. Taylor is a former director of 23andMe and the former chair of its

audit committee.

26.     David Baker is a former employee who served as the chief security officer

of 23andMe.

27.     KPMG has provided services as the Debtors' auditor.

**II.     The Cyber Security Incident**

28.     On October 1, 2023, a threat actor posted online a claim to have 23andMe

users' profile information (the "Cyber Security Incident").  Upon learning of the incident, the

Company immediately commenced an investigation and engaged third-party incident response

experts to assist in determining the extent of any unauthorized activity.  Based on its investigation,

the Company determined the threat actor was able to access a very small percentage (0.1%) of user

accounts in instances where usernames and passwords that were used on the Company website

were the same as those used on other websites that had been previously compromised or were

otherwise available.  Through their access to the foregoing accounts, the threat actor accessed files

containing information that users consented to share when opting into certain 23andMe service

offerings.  Accordingly, the Company determined that the threat actor ultimately accessed, without authorization, personal information relating to approximately seven million customers.

29.    The Cyber Security Incident resulted in numerous actions being filed or threatened against the Company in United States federal and state courts, Canada, and the United Kingdom, as well as the initiation of various domestic and foreign governmental investigations.

### III.    Defendants Bring Litigation Against the Debtors and the Additional Defendants

30.    Defendants are purported customers of 23andMe.  They claim to have purchased and used its products.  Following the Cyber Security Incident, Defendants brought two class action litigations against 23andMe and the Individual Defendants related to the Cyber Security Incident.

31.    On October 20, 2023, Defendants filed the Debtor Action against 23andMe in the Supreme Court of British Columbia.  They asserted claims related to the Cyber Security Incident and brought claims for breaches of provincial privacy legislation, intrusion upon seclusion, breaches of provincial consumer legislation, breach of contract, negligence, and breach of the Competition Act.  Then, nearly a year later, they sought to amend their pleading to add the Additional Defendants.  At that stage in the proceedings, leave of court would have been required to add additional defendants.  Rather than seek leave of court, they instead filed the Debtor and D&O Action.

32.    The Debtor and D&O Action, filed on September 18, 2024, names 23andMe, the Individual Defendants, and KPMG as defendants.  Ex. A ¶¶ 18–20, 34–40.  The Debtor and D&O Action brings many duplicative claims against 23andMe.  It also names the Individual Defendants and KPMG as defendants to these very same claims—that is, there is no claim against the Individual Defendants and/or KPMG in which the Debtors are not also

9

defendants.  For the avoidance of doubt, the Debtor and D&O Action is not a separate lawsuit where directors and officers are alleged to have breached any duty apart from any duty owed by the Debtors to their customers.  Nor, for that matter, are there any claims against the Additional Defendants alone.  Instead, the Additional Defendants are merely co-defendants in a large subset of the claims against the Debtors—the same claims alleged in the Debtor Action.

33.    The Debtor and D&O Action alleges that the Debtors and the Additional Defendants willfully, knowingly, recklessly, deliberately, and purposefully maintained improper data retention and protection measures and practices.  *E.g., id.* ¶¶ 9–10, 119–32.  This purportedly resulted in the availability of class members' data for sale on the dark web.  *Id.* ¶ 66.  Defendants here, the plaintiffs in the Canadian Proceedings, have brought the Debtor and D&O Action on behalf of a putative class of "[a]ll natural persons residing or domiciled in Canada whose sensitive personal information was accessed by unauthorized parties or otherwise compromised in the course of or as a result of the Data Breach."  *Id.* ¶ 11.  This is the exact same putative class as in the Debtor Action.  Defendants here, the plaintiffs in the Canadian Proceedings, assert claims jointly against 23andMe and the Individual Defendants claims for breach of provincial privacy legislation, intrusion upon seclusion, negligence, and breach of the Competition Act.  *Id.* ¶ 13.  They assert additional causes of action against 23andMe, including breach of provincial consumer legislation and breach of the terms of services.  *Id.*  These too overlap with the claims asserted in the Debtor Action.

34.    Defendants here, the plaintiffs in the Canadian Proceedings, allege that they suffered harms, damages, and losses as a result of 23andMe and the Additional Defendants' conduct, including economic loss; loss of valuable, confidential information; damages from identity fraud schemes; non-pecuniary harms, including emotional distress and anxiety; out-of-

10

pocket expenses; loss of valuable time and resources; and exposure to a real risk of significant harm as a result of the exposure of highly sensitive personal and commercial information. *Id.* ¶¶ 159–65.

35.     In the Canadian Proceedings, they seek "monetary compensation to the Class for general, compensatory, consequential, symbolic, moral, aggravated, punitive or other forms of damages, whether statutory, at common law and/or equity, on an aggregated basis to the fullest extent possible," pre- and post-judgment interest, and expenses. *Id.* part 2, ¶ 1.  They claim entitlement to "monetary awards or compensation under common law, statutory and/or equitable headings of damages," as well as "disgorgement," "accounting," or "such other restitutionary relief as may be available for all revenues or profits generated by the Defendants from, as a result of, or reasonably connected with its [*sic*] violations contractually and at law to protect their private information." *Id.* part 3, ¶¶ 64–65.

36.     All of the claims against the Individual Defendants are identical to claims brought against the Debtors in both the Debtor Action and the Debtor and D&O Action.  The Debtors are necessary parties in the Debtor and D&O Action, but the Debtor and D&O Action, like the Debtor Action, is unquestionably stayed as to the Debtors by operation of the automatic stay.  Resolution of the claims in the Debtor and D&O Action and any underlying issues without the participation of the Debtors may be prejudicial to the Debtors' right to present a defense in each of the Canadian Proceedings.

37.     Any documents and communications relevant to Defendants' claims against the Additional Defendants are in the Debtors' possession.  All of the claims in the Canadian Proceedings are based on conduct by the Debtors, and thus any discovery would be in the Debtors' possession.  The claims in the Canadian Proceedings do not allege any actions by the Individual

11

Defendants other than participating in the Debtors' conduct and do not allege any conduct by KPMG.[3]  Thus, the Additional Defendants will not possess any discoverable materials.  By allowing the Debtor and D&O Action to proceed, the Debtors could become subject to costly and burdensome discovery obligations—disrupting the Debtors' operations, depleting the value available to creditors, and interfering with the prompt and orderly disposition of the Chapter 11 Cases.

38.     Transparently, the claims against the Additional Defendants are an effort to avoid the automatic stay and recover from the Additional Defendants for alleged misconduct by the Debtors.  Not only did Defendants file the Debtor Action followed by the Debtor and D&O Action, asserting the same claims against both the Debtors and the Additional Defendants; they have since sought to amend the complaint in the Debtor Action to a near copycat of their complaint in the Debtor and D&O Action.  The Proposed Amended Complaint is attached hereto as Exhibit B and a redline comparison of the Proposed Amended Complaint and the complaint in the Debtor and D&O Action is attached hereto as Exhibit C.  Tellingly, paragraph 22 of the Proposed Amended Complaint expressly alleges as follows:

> On March 24, 2025, 23andMe commenced insolvency proceedings under Chapter 11 of the United States Bankruptcy Code, in order to "maximize stakeholder value" and "to facilitate a sale process to maximize the value of its business," according to 23andMe.  These events further revealed the inherently dangerous and potentially harmful nature of 23andMe's products and offerings, and raised significant concerns regarding the integrity and security of customer data.

In other words, Defendants are continuing to prosecute (indeed, expanding) the Debtor Action with full knowledge of these Chapter 11 Cases and seek to use the existence of the Chapter 11 Cases to further their claims against the Debtors, all in violation of the automatic stay.

---

[3] Defendants allege that KPMG issued certain marketing materials related to genomics, but those allegations do not form the basis of any claim and thus are not a legitimate subject for discovery.  Ex. A ¶¶ 50–61.

39.    The Proposed Amended Complaint merely strips a variety of paragraphs from the Debtor and D&O Action Complaint and adds six non-substantive allegations, most of which are variants of the allegation that 23andMe's product offerings were "potentially harmful." Ex. B ¶¶ 19–22; *id.* part 2 ¶ 17.  And it broadens the putative class definition such that, among other things, it now includes 23andMe customers whose data was not breached, if they merely "provided a bodily substance sample containing their DNA to 23andMe at any time since 23andMe's inception." *Id.* ¶ 8.  Absent relief from this Court, the duplicative claims against the Debtors and the Additional Defendants in the Canadian Proceedings will only continue to multiply.

### IV.    The Debtors' Indemnity Agreements and Insurance Policies

40.    23andMe Holding Co. is governed by the Certificate of Incorporation dated June 16, 2021, as amended on October 11, 2024.  Section 8.2(a) of the Certificate of Incorporation provides, creates broad indemnification obligations:

> To the fullest extent permitted by Delaware law, as the same exists or may hereafter be amended, the Corporation shall indemnify, defend and hold harmless each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit, investigation, arbitration or proceeding, whether civil, criminal, administrative or investigative (a "proceeding") by reason of the fact that he or she is or was a director or officer of the Corporation or any of its subsidiaries or, while a director or officer of the Corporation or any of its subsidiaries, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with respect to an employee benefit plan (an "indemnitee"),whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, against all liability and loss suffered and expenses (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes, and penalties and amounts paid in settlement) reasonably incurred by such indemnitee in connection with such proceeding.

41.    23andMe, Inc. is governed by the Certificate of Incorporation dated June 16, 2021, which creates broad indemnification obligations:

Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.

42.     Under these provisions, any judgment against the director and officer Individual Defendants could create indemnification obligations for the Debtors. The Canadian Proceedings, therefore, threaten to deplete the value of the estate, diminish the value available to creditors, and impair the operations of the Debtors in these Chapter 11 Cases.

43.     23andMe maintains numerous director and officer and other insurance policies, which provide coverage to the Individual Defendants for, among other things, losses related to their service as directors and/or officers that are not indemnified by 23andMe. Those policies are subject to aggregate limits of liability. The costs of, and damages sought in, the Canadian Proceedings may be paid out of these policies. Accordingly, each dollar that the Individual Defendants pay as damages reduces insurance proceeds otherwise available to satisfy claims on behalf of the Debtors and claims of their directors and officers under the policies. Any judgment against the director and officer Individual Defendants in the Canadian Proceedings would thus deplete insurance proceeds under these policies.

44.     A Special Committee is presently investigating claims the Debtors may have against, among others, the Individual Defendants. If any such claims are prosecuted on the Debtors' behalf, the funds available to satisfy any judgment may be provided by the Debtors' director and officer insurance policies. Because of the aggregate limit of liability applicable to those policies, paying any claims to the plaintiffs in the Canadian Proceedings would prejudice recoveries by the creditor body as a whole.

14

### V.    The Debtors Institute These Chapter 11 Cases

45.    On March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On March 27, 2025, the Court entered an order authorizing the joint administration of the Chapter 11 Cases, pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their property as debtors in possession, pursuant to 11 U.S.C. §§ 1107(a) and 1108.

### VI.    Defendants Contest the Application of the Automatic Stay and Refuse to Stay the Canadian Proceedings

46.    Prior to the filing of this adversary proceeding, counsel for the Debtors met and conferred with counsel for Defendants regarding the Debtors' position that the Canadian Proceedings are subject to the automatic stay and/or should be stayed during the pendency of the Chapter 11 Cases.  Defendants' position is that the Canadian Proceedings are not subject to the automatic stay and that the automatic stay should not be extended to those cases, nor should the prosecution of that case be enjoined.  Because there is a genuine disagreement between the parties as to whether the Canadian Proceedings should go forward, the Debtors now bring this adversary proceeding.

<u>**COUNT ONE**</u>
**Declaratory Judgment Pursuant to 28 U.S.C. § 2201**

47.    The Debtors incorporate by reference paragraphs 1–46 as if set forth fully herein.

48.    Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

15

49.     Bankruptcy courts, as units of the district court, have the authority to issue declaratory judgments. Courts possess jurisdiction to issue declaratory relief when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 127 (2007).

50.     There is a substantial controversy between the Debtors and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

51.     Upon the commencement of a bankruptcy case, the automatic stay operates as a stay, applicable to all entities, of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [Chapter 11]," or "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3).

52.     Without resolution of this controversy, the Debtors anticipate the Defendants will continue to pursue the Canadian Proceedings, which will deplete resources of the Debtors' estate.

53.     Additionally, the Individual Defendants may assert rights to indemnification under the Certificates of Incorporation in connection with the Canadian Proceedings.  They may also assert coverage under insurance policies, the proceeds of which would otherwise be available to satisfy other claims brought on behalf of the Debtors.  Discovery in the Canadian Proceedings would also be costly to the Debtors, and adjudication of those proceedings during the Chapter 11 Cases would prejudice the Debtors' rights.  Thus, the Canadian

16

Proceedings will undoubtedly have an "immediate adverse economic consequence" on the estate and are automatically stayed pursuant to 11 U.S.C. § 362(a)(1) and (3).

54.     Therefore, the Debtors are entitled to a declaratory judgment that the automatic stay applies to the Canadian Proceedings, including against the Additional Defendants.

<u>**COUNT TWO**</u>
**Extension of Automatic Stay Pursuant to 11 U.S.C. § 362**

55.     The Debtors incorporate by reference paragraphs 1–46 as if set forth fully herein.

56.     Upon the commencement of a bankruptcy case, the automatic stay operates as a stay, applicable to all entities, of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [Chapter 11]," or "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(1), (3).

57.     "[B]ankruptcy court[s] can stay cases against non-debtors . . . where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'"  *Ritchie Cap. Mgmt., L.L.C.* v. *Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011) (quoting *McCartney* v. *Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997), and citing *A.H. Robins Co.* v. *Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *see also Nat'l Bank of Ark.* v. *Panther Mtn. Land Dev., LLC (In re Panther Mtn. Land Dev., LLC)*, 686 F.3d 916, 921–23 (8th Cir. 2012); *accord, e.g.*, *Reliant Energy Servs.* v. *Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003).  "Extending the stay is warranted where there is a 'sufficient nexus' between a debtor corporation and its members and an extension of the stay would 'contribute to the debtor's

17

reorganization efforts.'" *In re Bailey Ridge P'rs, LLC*, 571 B.R. 430, 438 (Bankr. N.D. Iowa 2017) (quoting *In re Metro Square*, 1988 WL 86679, at *5 (Bankr. D. Minn. Aug. 10, 1988)).

58.    Here, there is an identity of interest between the Debtors and the Additional Defendants such that a judgment against the Additional Defendants would, in effect, be a judgment or finding against the Debtors.   The bases for this identity of interest include (1) the indemnification provisions in the Certificates of Incorporation, (2) the shared aggregate limit of liability under the insurance policies, (3) the Debtors' possession of relevant discovery in the Debtor and D&O Action, and (4) the overlapping claims against the Debtors and the Additional Defendants in the Canadian Proceedings, which cannot be fairly adjudicated without the Debtors' participation. *See, e.g.*, *Ritchie*, 653 F.3d at 762–63; *Lomas Fin. Corp.* v. *N. Tr. Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (holding that the Bankruptcy Court appropriately stayed action against a non-debtor third party pursuant to § 362(a)(1) where debtor was obligated to indemnify non-debtors with respect to claims in that action); *Am. Film Techs., Inc.* v. *Taritero (In re Am. Film Techs. Inc.)*, 175 B.R. 847, 853 (Bankr. D. Del. 1994) (extending automatic stay to non-debtor directors and officers in part because "there is an entitlement to indemnification between the debtor and its officers and directors").

59.    A bankruptcy court may also extend the automatic stay to a non-debtor when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Ritchie*, 653 F.3d at 763 (quoting *Queenie Ltd.* v. *Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)).  Prosecution of the Canadian Proceedings against the Additional Defendants while the Chapter 11 Cases are pending would cause adverse economic consequences for the estate by potentially forcing the Debtors to indemnify the Individual Defendants and sacrifice coverage to satisfy estate claims under their insurance policies—depriving the estate and creditors of value.

18

It would also cause adverse economic consequences by subjecting the Debtors to burdensome discovery and potentially prejudicing their ability to present a defense to claims brought jointly against the Debtors and the Additional Defendants, which comprise all claims brought against the Additional Defendants.

60.    Accordingly, the Debtors are entitled to an order extending the automatic stay to the Additional Defendants in the Canadian Proceedings.

### COUNT THREE
### Injunctive Relief Pursuant to 11 U.S.C. § 105

61.    The Debtors incorporate by reference paragraphs 1–46 as if set forth fully herein.

62.    Section 105(a) of the Bankruptcy Code permits the bankruptcy court to issue any order "necessary or appropriate" to assure the administration of the Debtors' bankruptcy estate, including issuing injunctions to extend the automatic stay to non-debtors.  11 U.S.C. § 105(a).  "[C]ourts have granted injunctions, at least on a temporary basis, to restrain actions against a principal of the debtor upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan."  *In re Bailey Ridge P'rs, LLC*, 571 B.R. 430, 438 (Bankr. N.D. Iowa 2017) (quoting *In re Three Seas Realty II, L.L.C.*, 2010 WL 2857598, at *3 (Bankr. N.D. Iowa July 19, 2010)).

63.    "In deciding whether to enjoin lawsuits under § 105, the Court considers the following factors: (1) whether there is a likelihood of a successful reorganization; (2) whether there is imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction."  *Id.*

19

64.    As to the first factor, for the reasons discussed in the Declaration of
Matthew Kvarda in Support of Chapter 11 Petitions and First Day Pleadings, Case No. 25-40976
(Bankr. E.D. Mo.), ECF No. 32, among others, there is a strong likelihood of a successful
reorganization.   Even before the Chapter 11 Cases were filed, the Debtors had received non-
binding indications of interest in a purchase of the Debtors, and although the Special Committee
determined that those proposals were not actionable, the Debtors have commenced a solicitation,
marketing, and auction process that is highly likely to result in a successful asset sale and
emergence from chapter 11.

65.    As to the second factor, an injunction is necessary to prevent irreparable
harm to the Debtors and their estates for three reasons.   *First*, it is simply not possible for the
Debtors to be bystanders to the Canadian Proceedings, given the significance of the action to the
Debtors' estates and the concerns set forth above.   *Cf. Lomas*, 117 B.R. at 67 (finding that debtor's
reorganization efforts would be irreparably harmed if the suit was not stayed because "[i]t [was]
not possible for [the company] to be a bystander to a suit which may have a $20 million issue
preclusion effect against it").   As such, without obtaining injunctive relief, the Debtors will be
forced to defend against the Canadian Proceedings and face irreparable harm in the form of losses
to creditors and parties-in-interest, and the diversion of funds away from the estate given the
Debtors' indemnification obligations and insurance policies.   *See In re Acis Cap. Mgmt., L.P.*,
Case. No. 18-30212-SGJ (Bankr. N.D. Tex. July 10, 2018), ECF No. 21 (granting injunction and
finding that "[i]njunctive relief is necessary here to prevent imminent and irreparable injury in the
form of substantial losses to creditors and parties-in-interest"); *In re LTL Mgmt., LLC*, 638 B.R.
291, 307 (Bankr. D.N.J. 2022) (finding that extension of the automatic stay was warranted where
"continued litigation against the [p]rotected [p]arties would divert funds and resources toward

20

defense costs and potentially disrupt the flow of funds and resources" towards debtor's estates). *Second*, continued prosecution of the Canadian Proceedings would distract the Debtors' key employees and divert time and resources away from the Debtors' restructuring, potentially threatening the Debtors' ability to swiftly and efficiently resolve these Chapter 11 Cases. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (enjoining non-debtors from continuing lawsuit "[b]ecause the suit would ultimately divert the debtor's resources and attention from the bankruptcy process."). *Finally*, for the foregoing reasons, continuation of the Canadian Proceedings would frustrate the purpose of the Automatic Stay—to provide debtors with a "breathing spell" to allow them to focus on the bankruptcy proceedings. *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986).

66.    As to the third factor, in contrast to the immediate and irreparable harm the Debtors and their estates would face if injunctive relief is denied, the only potential harm faced by Defendants is mere delay caused by applying the automatic stay to the Canadian Proceedings during the pendency of the Debtors' Chapter 11 Cases.  Mere delay as a result of an injunction issued until bankruptcy proceedings are resolved is not a significant harm. *In re Lazarus Burnam Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993).  Thus, the balance of equities weighs in the Debtors' favor.

67.    As to the fourth factor, public interest favors an injunction, which would enable the Debtors to maximize the value of their estates for the benefit of all stakeholders—a paramount goal of the Bankruptcy Code.

68.    Accordingly, the Debtors are entitled to a preliminary injunction enjoining the Canadian Proceedings.

21

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, for the reasons set forth above, the Debtors respectfully request that the Court:

A.  Declare that the automatic stay already stays the Canadian Proceedings, including as to the Additional Defendants, under section 362 of the Bankruptcy Code, or

B.  In the alternative, extend the automatic stay under section 362 of the Bankruptcy Code to the Additional Defendants with respect to the Canadian Proceedings; and

C.  Enjoin the Canadian Proceedings under section 105 of the Bankruptcy Code; and

D.  Award all such other and further relief that this Court deems just and proper.

Dated: April 14, 2025                    Respectfully submitted,
St. Louis, Missouri

**CARMODY MACDONALD P.C.**
/s/ *Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:    (314) 854-8600
Facsimile:    (314) 854-8660
Email:    thr@carmodymacdonald.com
              nrw@carmodymacdonald.com
              jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
William A. Clareman (admitted *pro hac vice*)
Max H. Siegel (application for admission *pro hac
vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
Email:    pbasta@paulweiss.com
              chopkins@paulweiss.com
              wclareman@paulweiss.com
              msiegel@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*